UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMANDA N. SCHEVE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-CV-00803-NCC |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Amanda N. Scheve ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 12), Defendant has filed a brief in support of the Answer (Doc. 19), and Plaintiff has filed a reply brief (Doc. 20). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for SSI and DIB on March 3, 2015 (Tr. 178-81, 197-206). Plaintiff was initially denied on August 19, 2015, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on August 24, 2015 (Tr. 104-05, 115-17). After a hearing,

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

by decision dated October 3, 2017, the ALJ found Plaintiff not disabled (Tr. 12-35). On March 37, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, and that Plaintiff has not engaged in substantial gainful activity since May 31, 2012, the alleged onset date (Tr. 17). The ALJ found Plaintiff has the severe impairments of an affective disorder, a trauma and stressor related disorder, a personality disorder, narcolepsy, restless leg syndrome, and obesity, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] with the following limitations (Tr. 20). She is limited to simple and/or repetitive work that does not require close interaction with the public (*Id.*). She can never climb ladders, ropes or scaffolds (*Id.*). She must avoid working at unprotected, dangerous heights or around unprotected, dangerous machinery (*Id.*). She should not be exposed to working alone near open water or open flame (*Id.*). She should avoid operation of motor vehicles (*Id.*). The ALJ found Plaintiff not capable of performing any past relevant work but that other jobs exist in significant numbers in the national economy that Plaintiff can perform including housekeeper, a laundry

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 416.967(b), 404.1567.

2

worker, an assembler, and a table worker (Tr. 28-29). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 29). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

3

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff argues that the final agency decision is not supported by substantial evidence and is the product of reversible error of law because her impairment-related inability to manage and take her medications was not properly assessed (Doc. 12). For the following reasons, the Court finds that the ALJ committed reversable error in his failure to appropriate consider whether Plaintiff's noncompliance with her prescription medication was attributable to her mental health impairments.

The ALJ may consider a failure to follow a course of treatment in determining whether a claimant may receive benefits. 20 C.F.R. §§ 404.1530, 416.930 (individual who fails to follow prescribed treatment without a good reason will not be found disabled). *See also Guilliams v. Barnhart,* 393 F.3d 798, 802 (8th Cir. 2005) (noting that plaintiff "did not take advantage" of physician's offer to refer him to specialist). The Social Security Administration has recognized that there are circumstances in which a Plaintiff's failure to prescribed treatment is justifiable and therefore does not preclude a finding of disability. Social Security Ruling (SSR) 82-59, 1982

5

WL 31384, at *4 (Jan. 1, 1982) (effective until Oct. 29, 2018) ("a full evaluation must be made in each case to determine whether the individual's reason(s) for failure to follow prescribed treatment is justifiable."). Psychological and emotional difficulties may deprive a claimant of the "rationality to decide whether to continue treatment or medication." *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2015). Moreover, "a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse." *Id.* (internal quotation marks omitted). Accordingly, the ALJ must determine whether a claimant's noncompliance is willful or a medically-determinable symptom of his mental disorder. *Id.* "Failure to make this critical distinction, despite evidence in the record supporting involuntary noncompliance, requires remand." *Whitmer v. Berryhill*, No. 4:17 CV 2145 ACL, 2018 WL 4383392, at *8 (E.D. Mo. Sept. 14, 2018) (citing *Sharp v. Bowen*, 705 F. Supp 1111, 1124 (W.D. Penn. 1989) ("To determine whether a claimant with a mental impairment reasonably refused treatment, the ALJ should consider whether the plaintiff 'justifiably refused in light of his psychological, social or other individual circumstances' because '[a]n individual with a severe mental impairment quite likely lacks the capacity to be 'reasonable.'")).

Here, the ALJ did not consider whether Plaintiff's noncompliance with her prescription medication was attributable to her mental health impairments. Rather, in nearly three full paragraphs in addition a multitude of reference throughout his opinion, the ALJ appears to have assumed the Plaintiff's failure to follow her prescribed regimen was willful and, thus, unjustifiable. The ALJ observed that Plaintiff's symptoms improve when she is complaint with her medications and worsen when she is not. The ALJ cited Plaintiff's own testimony that she had always been good at taking her medications, aside from one period when her doctors

6

switched all of her mediations at the same time (Tr. 21, 50-51). Indeed, as noted by the ALJ, the record does not support Plaintiff's testimony. The medical records indicate that Plaintiff's compliance with her medication regimen has been "erratic at best" (Tr. 402-07, 413, 416, 448). *See also* Tr. 290 (reporting that she has trouble remembering her medicine), 380 (difficulty taking meds on schedule). However, contrary to the ALJ's assessment, the records do not support his apparent conclusion that Plaintiff's failure to follow the prescribed course of treatment was willful. Instead, even with significant attempts at medication management assistance by Plaintiff's treating psychiatrist and his staff, Plaintiff continued to be "confused about what meds to take" (Tr. 462). Plaintiff arrived at one encounter with her psychiatrist with all of her pill bottles and Plaintiff's psychiatrist counseled Plaintiff on medication compliance, even providing a 1-month pill container, but after only a couple of months, staff was again required to discuss compliance strategies with Plaintiff (Tr. 463, 469). *See also* Tr. 414, 417 (counseling regarding medications). As recently as October 2016, Plaintiff sought help with medication compliance, relying on a case worker to assist with making a list of her medications (Tr. 482).

The records are replete with evidence that, even when compliant, Plaintiff suffered from memory, concentration, insight and judgment issues. Plaintiff testified that she has left herself notes in order to remember what she needs to do in a day (Tr. 59). In fact, Plaintiff lives with her mother who "helps manage making sure that [she] know[s] what needs to be done" (Tr. 60, 63). Plaintiff's mother testified that after Plaintiff's 2011 rape, which Plaintiff did not originally remember, "we saw a lot of change in her memory. It started with the not remembering the rape, but she didn't remember almost everything, and I started to have to keep track of everything. I had to start doing everything for her" (Tr. 66). *See also* Tr. 273, 275 (reporting she spends most

of the day on most days with Plaintiff to "assist her [and] remind her what to do" including reminding Plaintiff about her medicine); 448 ("mom fills out disability papers because client becomes overwelmed [sic]"); 455 ("mom and [Plaintiff]) request cm services because mom feels exhausted from providing direction and support with [Plaintiff]"). Plaintiff also receives help from a case worker to remember appointments and to organize her medications (Tr. 294, 482, 484). Plaintiff has been described by case workers as "often forgetful" (Tr. 482). Additionally, Plaintiff has been noted as having "limited judgment" and limited insight with one physician specifically indicating that she has "impulsive behavior, very limited capacity to perceive danger, [and] no concept of thinking prior to acting" (Tr. 406, 410, 413, 416, 419, 448, 451, 455, 459, 462-63, 465-66, 469, 471-72, 474, 478). Plaintiff has also reported difficulty concentrating, noting "The PTSD affects my memory and concentration. I can play a video game or do Facebook on my computer because it requires no memory and I can stop if my concentration is failing me" (Tr. 342). Treatment records also include notes of limited concentration. *See* Tr. 360 ("Difficulty concentrating"); 392 ("Poor concentration").

Further, the ALJ's conclusion that Plaintiff's symptoms would be controlled if she was complaint with her medications lacks support. While perhaps "better" when compliant with her medication, the evidence does not necessarily support the level of improvement as suggested by the ALJ in his opinion (Tr. 22-26). For example, Plaintiff's counselor indicated "big improvement" when Plaintiff was able to look the therapist in the eye and hold it during their sessions (Tr. 385). Plaintiff's psychiatrist indicated that even when compliance improved, she continued to have social anxiety, significant anxiety generally, low motivation, fatigue, and intrusive thoughts (Tr. 420, 465, 471, 474). That same psychiatrist found Plaintiff to have GAF

8

scores[3] of 50 or below on a regular basis and that Plaintiff could only work part time (Tr. 422 (50), 430 (40), 460, 485 (40), 487 (45)). The ALJ assigned little weight to both the GAF scores and two letters the psychiatrist wrote on Plaintiff's behalf (Tr. 26). The ALJ specifically discounted the letters in part because the letters were written at the request of Plaintiff and her mother (*Id.*). However, the ALJ largely disregarded the mental impairment questionnaire completed by the same psychiatrist on January 5, 2017 in which made the following significant observations: (1) "The patient is extremely dependent on her parents . . . and would not be able to perform her current low level of functioning without this support" and (2) "The patient is too poorly organized at this time to manage money. She has only recently been able to take her medications correctly" (Tr. 487-89). Plaintiff's psychiatrist also indicated in his opinion that Plaintiff had marked limitations in concentration, persistence or pace (Tr. 488). In sum, the ALJ's failure to obtain medical evidence regarding the effect of Plaintiff's mental impairments on her ability to remain compliant with her medications requires remand.

## V. CONCLUSION

For the reasons set forth above, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to consider the effect of Plaintiff's mental impairments on her ability to remain compliant with her medication regimen; further develop the medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

---

[3] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

Dated this 29th day of August, 2019.

                                                  /s/ Noelle C. Collins
                                                  NOELLE C. COLLINS
                                                  UNITED STATES MAGISTRATE JUDGE